**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF HAWAII**

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 18 2013

at___o'clock and ___min___
SUE BEITIA, CLERK

BRIAN EVANS

GENERAL DELIVERY

KEAAU, HAWAII 96749,

PLAINTIFF, Pro Se

CASE NO. CV13  00355 KSC

**COMPLAINT**

Paragon Properties, LLC

437 Boylston Street Suite 503

Boston, Massachusetts, 02116,

DEFENDANT,

Douglas Melcher, Individually and in his capacity as an Employee of Paragon Properties, LLC

437 Boylston Street, Suite 503

Boston, Massachusetts 02116,

DEFENDANT,

Maura Nicholson, individually and in her capacity as an attorney for Paragon Properties, LLC

437 Boylston Street Suite 503

Boston, Massachusetts, 02116,

DEFENDANT

James Seeley,

Boston, Massachusetts

DOES 1-3

## COMPLAINT FOR MALICIOUS PROSECUTION, EXTORTION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, VIOLATION OF THE FDCPA

### JURY TRIAL DEMANDED

**Plaintiff, Pro Se, for his complaint against Defendants allege as follows and describes jurisdictional justification herein.**

### JURISDICTION AND VENUE

1. This Honorable Court has subject jurisdiction over this matter under Diversity Jurisdiction, 28 USC 1332 as the matter is between parties from different states and exceeds $75,000 in its claims.

2. Plaintiff is a resident and full time citizen of the state of Hawaii.

3. The United States Supreme Court determined in Erie Railroad v, Tompkins (1938 that the law applied in a diversity case would be the law of whatever state in which the action is filed.

4. In Leblanc v. Cleveland, 248 F. 3d 95 (2nd Cir. 1999) it is stated that Diversity is determined at the

time that the action is filed, and on the basis of the residency of the parties at that time. A change in domicile by a party before or after that date is irrelevant.

5. Under Article III of the Constitution, federal courts can hear "all cases under law and equity arising under this Constitution and laws of the United States".

6. To prevent bias, Diversity Jurisdiction was created on the basis that claims can be heard in the federal court so as to not permit unfair biased when defendants, such as the defendants in this case, control or dominate the state for which they are being sued, especially if they have enormous influence in that state (Guar Trust Co. v. York, 326 U.S. 99, 111 (1945).

**PARTIES**

8. BRIAN EVANS, Plaintiff (Pro Se) a resident and citizen of Hawaii

9. Paragon Properties is an LLC located and operating in Boston, Massachusetts

10. David Melcher is a resident and citizen of Boston, Massachusetts

11. Maura Nicholson, is a resident and citizen of Boston, Massachusetts

11A. James Seeley, a resident and citizen of Boston, MA

**COUNT ONE**

(Malicious Prosecution)

12. Defendants filed a false police report on May 30th, 2013, just two weeks after the Defendants knew that the Plaintiff had returned home to Hawaii after he had rented a condo through this company for over one year. Rent was paid, a security deposit was paid, and there was never a single complaint filed by these Defendants until they knew he had returned home to Hawaii in an attempt to extort monies from him, knowing the cost of attending any hearing would far exceed the money the Defendants have

been attempting to extort from Plaintiff. The report alleges a check was written and not honored by the bank...over a year ago. Defendants assisted Plaintiff in a move from Rockport, Massachusetts to Boston, Massachusetts, knew that he was in the process of changing banks so that he had access to a bank closer to the Boston address, but agreed to simply "hang on" to the checks from the old bank and would return them when full payment had been made. There can be no argument that claims any attempt to defraud the Defendants when the Plaintiff lived about a block away and was constantly making cash payments to James Seeley while he was still at Paragon Properties, one such payment being made in front of a hotel in Boston in cash.

13. The Plaintiff resided literally one block from office of the Defendants for over a year, and never a complaint was made. In their "criminal complaint," the Defendants allege Plaintiff gave them a check for approximately $4,000 that did not clear. Plaintiff paid his rent on time every month until he moved back home to Hawaii (Plaintiff was in Boston for a music project), and not once did Paragon Properties walk a block over to Plaintiff's home to complain about a check (or checks) that hadn't cleared.

14. The fact is, Plaintiff was being charged a "finder's fee" by Paragon Properties to find the condo he rented, that they represent. Plaintiff, on numerous occasions, went to the offices of Paragon Properties and paid various cash payments to an employee named James Seeley. The agreement was that the check "would be held" until full payment had been made. Given it took the Defendants over one year to file this Criminal Complaint since being given that check to hold only as collateral, the payments were obviously being made in a manner that satisfied Paragon Properties to the point where a criminal complaint had never been filed against the Plaintiff, done simply to make the Plaintiff "look bad," given his very public disputes related to other matters filed within this court, and the success of his music project aimed at a major Boston sports team.

15. That employee, James Seeley, as of this Complaint, apparently no longer is part of "the team" of

Paragon Properties (**Exhibit A**). Instead, co-defendant Douglas Melcher, whom Plaintiff has never met (as obvious by the co-defendant claiming that the 5'11 Plaintiff is 5'7 in height on the bogus complaint), suddenly began telephoning Plaintiff at all hours, threatening that if he didn't pay him money, he would "file a police report." Plaintiff refused to pay for a check that was only being held as collateral as payments were being made, and to this day has never even provided the Plaintiff, just the court in their complaint, with a copy of this check in question. At all times the Defendants knew the Plaintiff had changed banks when he was now living in Boston, a condo they put the Plaintiff in. Plaintiff paid Defendants more than $5,000 prior to even walking into the condo.

16. Defendant at all times knew of Plaintiff's high profile project with The Boston Red Sox, who is named in a separate lawsuit before this Honorable Court, and in fact the false police report the Defendants have filed didn't occur until every lawsuit that the Plaintiff has filed in this Court as it relates to matters regarding both the Boston Red Sox and Plaintiff's mother. Exhibit A is a recent Golf Tournament that involved both Paragon Properties, and The Boston Red Sox.

17. The timing of this false complaint being filed against this Defendant is no coincidence. It took them a year to file it. One would assume that if someone wrote them a check a year ago, for a condo the Plaintiff lived in every day while working in Boston, it wouldn't have taken them a year to make a complaint about it. As (**Exhibit B**) confirms, there's clearly a connection between Paragon Properties sudden complaint, and a defendant in another case within this court. This is nothing more than an attempt to, while jurisdictional issues are being decided as to whether Hawaii is proper jurisdiction for Plaintiff's other cases, to intimidate Plaintiff to not want to return to Boston to re-file there if the court in Hawaii ruled against the Plaintiff. It simply makes no sense that a Defendant, who operated a block from the Plaintiff, who knew he lived there for more than a year, would suddenly, out of the blue, file a criminal complaint just two weeks after Plaintiff returned to Hawaii, which was publicly announced in

both the media and Plaintiff's own social pages months before his return. Defendant had over a year of Plaintiff residing in a unit the Defendants represented to file such a complaint, but instead has used the courts in Massachusetts as a weapon to intimidate the Plaintiff from pursuing his cases due to their connections with Plaintiff's defendants in other cases. Otherwise, why wait a year to allege a felony when the guy your accusing lives in the condo you represent for over a year.

## COUNT TWO

(Extortion)

18. **Exhibit C** are several emails from an attorney claiming to represent Paragon Properties as it sought money from the Plaintiff. This attorney, as co-defendant Douglas Melcher also did, threatened that if Plaintiff did not pay them monies, that a "Criminal Complaint" would be filed. This attorney is Maura Nicholson, whose office is promoted as being in the same office as Paragon Properties. Her various emails "awaiting word from her clients," who she shares an office with, are disingenuous at best (**Exhibit D)**

19. **Exhibit E** was that threat occurring.

20. Meanwhile, James Seeley, clearly not listed as "part of the Paragon Properties LLC" team as exhibited in Exhibit A, has his own website, **Exhibit F**, which has a disclaimer that claims to be "employed by or consult with Paragon Properties."

21. No where in the criminal complaint filed by co-defendant Melcher is the name James Seeley ever mentioned, who is the only individual the Plaintiff ever gave monies to prior to moving in to the condo Seeley claimed to represent. The actual condo owners, however, state they never represented the property at all (affidavit forthcoming), and were approached by Paragon Properties LLC when it was learned Plaintiff was looking for a place to stay while in Boston to work.

22. The goal is attempting to extort $4,000+ for some check, the goal is to defame the Plaintiff, make him pay money he does not owe and made payments on (Plaintiff contends there could be a balance owing, but thousands had been paid over the last year in cash directly to the office by Plaintiff). The fact is, however, that this is not about a legitimate claim that the Plaintiff did something wrong, but is a calculated effort to hurt Plaintiff's reputation, score one for some of their friends, and to make it cheaper for Plaintiff to write a check than to fly to Boston for hearings on a false claim. The American Bar Association clearly states: "A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." As Discovery will show, Co-Defendant Nicholson did just that (her letter doing so is being submitted along with a complaint to the Massachusetts Bar Association in the near future).

## COUNT THREE

### (Intentional Infliction of Emotional Distress)

23. The Defendants fully knew that Plaintiff, Brian Evans, was in Boston to work on a high profile music video. Plaintiff lived in that condo for over one year. Never a threat of any "criminal complaint" or otherwise was ever made. It took Defendants over a year to create this fictional story while leaving out their extortion threats that have caused Plaintiff to suffer extreme emotional distress, especially when Plaintiff, prior to moving back home to Hawaii, actually had a lengthy (as phone records will confirm) phone call with Paragon Properties about the passing of his mother. At no time during that more than one hour phone call was a threat to make a criminal complaint ever made. Plaintiff has already suffered the worst tragedy of his life, the loss of his mom, and for these Defendants to then add to the mix of protecting their friends who are Defendants in other case's, it's simply been too much to deal with. Plaintiff has had headaches, loss of sleep, appetite, and other problems due to the stress of what these Defendants have put him through.

## COUNT FOUR

## (VIOLATION OF THE FDCPA)

24. Under the FDCPA, (which co-defendant Nicholson was clearly acting as while sitting in the same office as the Co-defendants) Collector cannot state or imply that non-payment will result in arrest or criminal prosecution. 15 U.S.C. § 1692e(4). Not only did the Defendants do exactly this, in writing, but they actually filed the complaint that they knew to be untrue while misleading the Massachusetts Court System in statements made at a June 26th, 2012 "hearing" that the Plaintiff could not possibly attend, and who was reduced to writing a brief letter to the court that he doesn't even know whether it was read or not.

25. Also under the Under the FDCPA, (15 U.S.C. § 1692f(3), "Collector cannot accept or solicit postdated check for purpose of threatening criminal prosecution." Plaintiff simply states, "Then why else hold onto it for a year when the tenant lived a block away and was practically everywhere in the media during that time."

26. Plaintiff intends to subpoena the email servers of the Defendants in order to provide the court with further evidence of this, as well as future exhibits in possession on Plaintiff at this time.

27. These Defendants held on to this check for over a year, then began a barrage of threats including prosecution if he did not pay. The Defendants had over a year to Notice, Sue, file a Complaint, or otherwise against the Plaintiff. Instead, they decided ambushing him was a better tactic.

## CONCLUSION

28. There can be simply no other conclusion than that the Defendants in this case have conspired to extort monies from the Plaintiff, had an attorney "seek to negotiate" while claiming she was "waiting to hear back from her clients" (who likely sat right next to her as her own website states she in the same

suite as Paragon Properties), and the actions taken by the Defendants have resulted in the claims herein.

**WHEREFORE**, Plaintiff prays the judgment against the Defendants as follows:

1. For statutory damages for each infringement in the amount of $1 million dollars.

2. That punitive damages be awarded, if permitted by this Honorable Court

3. For such other and further relief as the Court may deem just and proper.

Respectfully Submitted:

BRIAN EVANS

July 17th, 2013